UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


BERNARD MOORE,                )
          Plaintiff           )
                              )
               v.             )  C.A. NO. 09-cv-30208-MAP
                              )
WILLIAMS COLLEGE,             )
          Defendant           )


MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 22)

April 7, 2010

PONSOR, D.J.

I. INTRODUCTION.

Pro se Plaintiff Bernard Moore sued his former
employer, Defendant Williams College, alleging breach of
employment contract; wrongful termination; wrongful denial
of continuation coverage in violation of the Comprehensive
Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29
U.S.C. 1161(a); violation of Mass. Gen. Laws ch. 186, § 14;
and denial of unemployment benefits.  Defendant moved to
dismiss the complaint in its entirety.  (Dkt. No. 22.)  For
the reasons set forth below, the court will allow
Defendant's motion.

II. FACTUAL BACKGROUND.

On July 1, 2008, Plaintiff was appointed as a Visiting
Lecturer in Defendant's Political Science Department for a

one-year term.  To obtain the position, he provided
Defendant with various credentials, including a graduate but
not an undergraduate transcript.  Defendant later learned
that Plaintiff had gained admission to graduate school by
submitting forged undergraduate credentials and had never
earned a bachelor's degree.

     At the time of his appointment, Plaintiff was asked
whether he had been convicted of a crime in the past five
years.  He answered in the negative and did not disclose a
conviction for felony bank fraud that occurred more than
five years previously.[1]  Defendant appears to have been
satisfied with Plaintiff's performance as a lecturer,
because on July 1, 2009, Plaintiff was reappointed, this
time as Assistant Professor, for a three-year term.
Throughout his period of employment with Defendant,
Plaintiff resided at an apartment in Defendant's faculty
housing.

     During the 2009-2010 school year, on November 9, 2009,
Plaintiff pled guilty in the United States District Court
for the District of Columbia to student aid fraud, bank
fraud, and Social Security fraud.  (Dkt. No. 23, Ex. C, Plea

---

     [1] There is some dispute about the date of the prior
conviction.  Plaintiff places it in 1987 (Dkt. No. 26, Ex. 1,
Aff. of Bernard Moore 14); Defendant cites to a 1997 case,
U.S. v. Moore, 127 F.3d 1107, 1997 WL 665655 (9th Cir. 1997)
(unpublished disposition).

Agreement 1-2.)  Documents submitted in connection with the
plea proceeding confirmed that Defendant defrauded multiple
institutions, including educational institutions, over a
period of approximately twenty-five years.  (See Dkt. No.
23, Ex. D, Statement of the Offense.)  There is some dispute
as to whether Plaintiff committed any crimes while actively
employed by Defendant.  For purposes of this Motion to
Dismiss, the court will accept Plaintiff's assertion that he
did not.

On November 10, 2009, Defendant, having learned of
Plaintiff's guilty plea, suspended Plaintiff without pay and
denied him further access to the college, including his
apartment in faculty housing.  On November 12, 2009, William
G. Wagner, Defendant's Interim President, sent a letter to
Plaintiff explaining that he was being terminated for cause
because of his guilty plea, his failure to notify the
college of the crimes and subsequent plea, fraudulent
credentials he had supplied to Williams College in seeking
employment, and his misuse of a Williams College credit
card.

On November 16, 2009, Wagner e-mailed all students at
Williams College to inform them that Plaintiff was no longer
employed at the college.  He added that there was "no
evidence of serious misuse on his part of College

-3-

resources." (Dkt. No. 9, Ex. E.)  On the same day, Defendant cancelled Plaintiff's health insurance.  Plaintiff e-mailed Wagner to express his intention of exhausting his administrative remedies with respect to his COBRA rights and any other rights he might have.

On November 17, 2009, Plaintiff requested COBRA continuation coverage.  The next day, Martha R. Tetrault, Defendant's Director of Human Resources, informed Plaintiff that he was ineligible for COBRA coverage because he had been terminated for "gross misconduct."  (Dkt. No. 9, Ex. G, Letter dated November 18, 2009, from Martha R. Tetrault to Professor Bernard Moore.)

Plaintiff filed this action on November 27, 2009.  He amended the original complaint twice, and by February 2010, the parties had filed seven preliminary motions and requests, including Defendant's Motion to Dismiss (Dkt. No. 22).  After consultation with the parties, the clerk set all five motions and the two requests for oral argument on February 17, 2010.  The court ruled from the bench on all then-outstanding motions except the Motion to Dismiss, with dispositions as follows:

- Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 7) was denied;

- Plaintiff's Motion for Waiver of Posting a Security Bond in Obtaining a Temporary Restraining Order and a Preliminary Injunction (Dkt. No. 11) was denied;

-4-

- Plaintiff's requests that the court strike the pleadings (Dkt. Nos. 28 and 29) were denied;

- Plaintiff's Motion to Seal Exhibits C and E in Support of Plaintiff's Reply to the Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 27) was allowed; and

- Defendant's Motion to Stay Discovery (Dkt. No. 24) was allowed.

With respect to Defendant's Motion to Dismiss (Dkt. No. 22), the court did not rule but did indicate that it would allow the motion as to Count I (breach of employment contract and wrongful termination), Count III (denial of housing), and Count IV (denial of unemployment benefits).[2] The court took the motion under advisement to consider the disposition of Count II, the claim that Defendant wrongfully interfered with Plaintiff's election rights under COBRA.

### III. DISCUSSION.

A.   Count I: Breach of Contract and Wrongful Termination.

Plaintiff alleges that his termination of employment prior to the expiration of his three-year term was unlawful because (1) the conduct at issue occurred before he was employed at Williams, (2) he submitted no fraudulent credentials to Williams, and (3) he had no obligation to notify his employer of his guilty plea. (Dkt. No. 18,

---

[2] Plaintiff conceded that Count IV lacked merit because his claim for benefits was still pending.

Second Am. Compl. 6.)   A contract of employment may be
terminated before its expiration if the termination is for
cause.   Valid causes may include

> dissatisfaction with [an] employee, entertained in
> good faith, for reasons such as lack of capacity or
> diligence, failure to conform to usual standards of
> conduct, or other culpable or inappropriate
> behavior, or . . . grounds for discharge reasonably
> related, in the employer's honest judgment, to the
> needs of his business.   Discharge for a 'just
> cause' is to be contrasted with discharge on
> unreasonable grounds or arbitrarily, capriciously,
> or in bad faith.

Klein v. President and Fellows of Harvard Coll., 517 N.E.2d
167, 169-70. (Mass. App. Ct. 1987) (quoting G & M Employment
Serv., Inc. v. Commonwealth, 265 N.E.2d 476, 480 (Mass.
1970)).

In this case, the discharge was not arbitrary or
capricious.   Defendant learned, among other things, that
Plaintiff had fabricated undergraduate credentials in order
to gain admission to graduate school.   As a college in the
business of credentialing undergraduates, Defendant has a
strong interest in ensuring that members of its faculty have
come by their own credentials legitimately.   Moreover, the
termination by a college of an admitted felon, particularly
one who has committed student aid fraud, can hardly be
described as lacking just cause.   The discharge for was thus
honestly related "to the needs of [the] business," Klein,
517 N.E.2d at 170.   Accordingly, Count I will be dismissed.

-6-

B.    Count III: Tenants' Rights.

        Plaintiff argues that his exclusion from faculty
housing violated Mass. Gen. Laws ch. 186, § 14, which
protects tenants from certain actions by their landlords.
However, the statute applies only to tenants, not to
licensees or other individuals who may enjoy the use of real
property, and Plaintiff was never Defendant's tenant.   There
is no landlord-tenant relationship where housing is provided
in an employment context and the lease term does not extend
beyond the period of employment.   Allendale Farm Inc., v.
Koch, No. 97350, 1999 WL 33579241, at *1 (Mass. Super. Aug.
9, 1999).   Plaintiff's housing agreement explicitly provided
that he had to vacate the premises "no later than June 30"
of the academic year in which his appointment ended.   (See
Dkt. No. 23, Ex. A, Housing Agreement ¶ 6.)   His housing was
provided as a condition of employment and only for so long
as he remained employed by Defendant.   He was therefore not
a tenant and is not entitled to the protections of the
statute.   Accordingly, Count III will be dismissed.

C.    Count IV: Denial of Unemployment Benefits.

        On the papers, Plaintiff argued that Defendant denied
him unemployment benefits or somehow prevented his obtaining
unemployment benefits.   However, at the February 17, 2010
hearing, Plaintiff informed the court that his benefits had

-7-

not, in fact, been denied and that his application was still
pending.  He agreed that Count IV lacked merit, and the
court will therefore dismiss Count IV.

D.    Count II: Denial of Right to Elect Continuation
      Coverage under COBRA

     Defendant argues that Plaintiff's COBRA claim fails as
a matter of law because Plaintiff was fired for gross
misconduct.  In general, a terminated employee with
employer-provided health insurance is entitled to COBRA
coverage.  29 U.S.C. § 1161(a).  However, an employee fired
for "gross misconduct" is not so entitled.  29 U.S.C. §
1163(2).

     Defendant's November 12, 2009 letter terminating
Plaintiff's employment provided four reasons for
termination:

     1.    Committing and/or pleading guilty to a crime;

     2.    Providing fraudulent credentials so as to obtain
           employment

     3.    Failing to notify employer of crime and/or guilty
           plea

     4.    Using college credit card for charges "not
           permitted by College policy."

(Dkt. No. 9, Ex. B.)  In its Motion to Dismiss, Defendant
relies on the first two reasons -- criminal conduct and the
use of false records to obtain employment.  The court must
determine whether either of these acts constituted "gross

misconduct" for COBRA purposes.

There are no regulations defining "gross misconduct" for purposes of the statute, and "federal case law addressing the subject is sparse." <u>Zickafoose v. UB Services, Inc.</u>, 23 F. Supp. 2d 652, 655 (S.D.W.Va. 1998). In general, courts have found that mere "negligence or incompetence" does not rise to the level of gross misconduct. <u>Mlsna v. Unitel Communications, Inc.</u>, 91 F.3d 876, 881 (7th Cir. 1996). <u>See also</u> <u>Nakisa v. Continental Airlines</u>, No. H-00-090, 2001 WL 1250267, at *2 (S.D.Tex. May 10, 2001); <u>Cabral v. Olsten Corp.</u>, 843 F. Supp. 701, 704 (M.D.Fla. 1994). Courts have declined to find gross misconduct where the behavior at issue was inadvertent or sporadic -- for example, where a forgetful employee occasionally neglected an employer's instructions. <u>Nero v. Univ. Hospitals Mgmt. Services Org.</u>, No. 1:04vc1833, 2006 WL 2933957, at *5 (N.D. Ohio Oct. 12, 2006) (distinguishing <u>Bryant v. Food Lion Inc.</u>, 100 F. Supp. 2d 346 (D.S.C. 2000), <u>aff'd</u>, 8 Fed. Appx. 194 (4th Cir. 2001)). Likewise, courts have not found gross misconduct where an accountant submitted an "unfavorable" financial statement to Dun & Bradstreet (a business credit reporting agency), <u>Mlsna</u>, 91 F.3d at 881, or where an employee repeated the substance of a private conversation to a co-worker's wife, <u>Paris v.</u>

Korbel & Bros., Inc., 751 F. Supp. 834, 836, 838-39
(N.D.Cal. 1990).

Courts have found gross misconduct where a drunken
employee crashed an employer-provided car, Collins v.
Aggrecko, Inc., 884 F. Supp. 450, 452, 454 (D. Utah 1995);
where an employee called a co-worker a racial slur and threw
an apple at her, Nakisa, 2001 WL 125026, at *3; where an
employee battered a co-worker, placing her in the hospital,
Zickafoose, 23 F. Supp. 2d at 654 and 657; where an employee
stole from her employer, Burke v. Am. Stores Employee
Benefit Plan, 818 F. Supp. 1131, 1133, 1138 (E.D.Ill. 1993);
and where an employee repeatedly and persistently refused to
follow the instructions of his supervisor, Bryant, 100 F.
Supp. 2d at 365.

In short, the conduct at issue must generally be
"outrageous, extreme or unconscionable" to constitute gross
misconduct.  Zickafoose, 23 F. Supp. 2d at 655.  Some courts
have also determined that the conduct must evince an "evil
design" against the employer or, absent malice, "an
intentional and substantial disregard of the employer's
interests."  Korbel, 751 F. Supp. at 839.  See also Bryant,
100 F. Supp. 2d at 376 (quoting Korbel, 751 F. Supp. at
839); Collins, 884 F. Supp. at 453 (same); Burke, 818 F.
Supp. at 1135 (same).

The conduct in this case is sufficiently outrageous to constitute gross misconduct, and while it did not arise from an "evil design" to harm Defendant, it indicated a reckless disregard for Defendant's interests.  First, there was the student aid fraud.  Plaintiff systematically defrauded student lending institutions, the very institutions that colleges rely on for their ongoing support and, to some extent, for their survival.  The conduct was criminal, was deliberate, and was repeated.  His concealment of this behavior, and his exposure as a student loan scam artist, was obviously detrimental to the interests of the college.

Second, and perhaps more importantly, there was the issue of Plaintiff's falsely obtained credentials. Defendant was surely aware that a bachelor's degree was a prerequisite to most, if not all, graduate programs.  He must have known that Defendant, having viewed his graduate transcript, would have assumed quite reasonably that Plaintiff had obtained a bachelor's degree.  Plaintiff was hired to teach undergraduates.  Defendant's assumption that he had at some point in time been an undergraduate was directly relevant to the initial hiring decision.  By putting forward his graduate credentials while failing to disclose that he had no bachelor's degree, and had indeed fabricated that credential, Plaintiff knowingly

-11-

misrepresented himself and his qualifications for the job.

Finally, and perhaps most importantly, Plaintiff's history rendered him unfit to teach undergraduates.  Instead of earning a bachelor's degree, he simply lied about having obtained one.  Such an individual cannot credibly instruct undergraduate students who are hard at work trying to obtain the credential he fabricated.

Plaintiff's conduct was not negligent or sporadic; it was not the result of mere carelessness or inattention to detail.  It was deliberate and systematic, and it rendered him uniquely unfit for the job from which he was terminated. Such conduct was properly characterized as gross misconduct for purposes of COBRA.

### IV. <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss (Dkt. No. 22) is hereby ALLOWED.  This case may now be closed.

It is So Ordered.

                    <u>/s/ Michael A. Ponsor</u>
                    MICHAEL A. PONSOR
                    U. S. District Judge